## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STUART C. IRBY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-0617-CVE-FHM** |
| | ) | |
| **WIRE NUTS ELECTRIC, INC.,** | ) | |
| **CHRISTY MCGILL,** | ) | |
| **WILLIAM SMITH, and** | ) | |
| **JANET SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Stuart C. Irby Company's Motion for Summary Judgment on the

Claim Asserted against Christy McGill (Dkt. ## 59, 60).  Plaintiff Stuart C. Irby Company (Irby)

seeks summary judgment on its claim of breach of guaranty against defendant Christy McGill, and

it argues that McGill has failed to pay Wire Nuts Electric, Inc. (Wire Nuts) debts pursuant to a

personal guaranty she executed.  Dkt. # 59.  McGill argues that she agreed to guarantee Wire Nuts'

debts only up to $2,500, and that she cannot be held liable for any amount of Wire Nuts' debts over

$2,500.  Dkt. # 62.

## I.

Irby "sells electrical materials to contractors for use in construction projects." Dkt. # 59-1,

at 1. On April 6, 2009, Wire Nuts submitted an Application for Credit and Billing Information

(Application) to Irby. The Application was signed by Christy McGill, President of Wire Nuts,

William Smith, Vice President of Wire Nuts, and Janet Smith, Chief Financial Officer of Wire Nuts.

Id. at 5.   Wire Nuts requested a credit limit of $2,500, and the Application stated that the applicant

would be required to submit financial statements for credit requests over $5,000.  No financial statements were submitted with the Application.  As part of the Application, McGill, William Smith, and Janet Smith also executed a personal guaranty that provides:

> The undersigned has completed this Credit Application for the purpose of obtaining credit from [Irby] as an inducement to [Irby] extending credit to the above-named Applicant.  Each of the Individuals signing below in the spaces designated for Guarantor(s), by their signatures below, jointly and severally, hereby unconditionally guarantee to [Irby] the payment of all existing indebtedness of the Applicant, together with any and all amounts that the Applicant shall at any future time owe to [Irby] on account of materials, equipment, or any other goods or services furnished or sold, whether such indebtedness is in the form of an open account, promissory note, other commercial paper, or otherwise.

Id. at 6.  The guaranty was to remain in force "until revoked by written notice from the undersigned . . . ." Id.  However, revocation of the guaranty would not prohibit Irby from enforcing the guaranty as to "the liability of the undersigned as to any indebtedness owed by the Applicant at the time of such revocation or any indebtedness incurred by the Applicant prior to receipt by [Irby] of the above-mentioned revocation notice." Id.  The guaranty did not expressly incorporate the credit limit stated in the Application, and the guaranty stated that the guarantors were responsible for the "payment of all existing indebtedness" of Wire Nuts, including any amounts Wire Nuts would incur at a future time.  Id.

McGill served as Wire Nuts' President until March 2011, and she states that Janet Smith was responsible for accounts payable during that time.  Dkt. # 62-1.  In March 2011, McGill left her employment with Wire Nuts, but she did not attempt to revoke her personal guaranty of Wire Nuts' indebtedness to Irby.  McGill states that she believed that her liability under the personal guaranty could not exceed $2,500, because she did not consent to the alteration of Wire Nuts' credit limit and she did not personally submit a financial statement to Irby as required by the Application for credit

2

requests in excess of $5,000.  Id.  However, Wire Nuts utilized its line of credit with Irby to purchase

goods well in excess of $2,500 and, as of March 18, 2013, Wire Nuts owed a principal balance of

$179,682.36.  Dkt. # 59-1, at 2.  In addition, Wire Nuts owed Irby $80,120.54 in services charges

on the account.[1]  Id.

On November 5, 2012, Irby filed this case alleging that Wire Nuts breached the Application

by failing to pay for goods received from Irby.  Irby also sought to enforce the personal guaranties

executed by McGill, William Smith, and Janet Smith.  Irby has obtained default judgments against

Wire Nuts, William Smith, and Janet Smith for unpaid principal in the amount of $179,682.36, plus

$80,120.54 in service charges, plus post-judgment interest.  Dkt. ## 29, 40.  McGill has retained

counsel and answered the complaint.  Dkt. # 15.  Irby has filed a motion for summary judgment

(Dkt. # 59) against McGill and it asks the Court to enter judgment against McGill for breach of

guaranty.  The only pending claim is Irby's claim for breach of guaranty against McGill.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

[1]     McGill does not contest Irby's calculation of the outstanding principal balance or the service
        charges, and the amount of Wire Nuts' liability is not in dispute.  Dkt. # 62, at 3.

<u>Celotex</u>, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff asks the Court to enter judgment against McGill for the full principal balance and service charges owed by Wire Nuts, because McGill executed a personal guaranty for the full amount of Wire Nuts' indebtedness and the guaranty does not limit McGill's personal liability to $2,500.  McGill argues that the Application caps Wire Nuts' credit limit at $2,500, and that she should be exonerated from paying any amount in excess of $2,500.  Dkt. # 62.

A guaranty "is a promise to answer for the debt, default or miscarriage of another person," and such agreements are enforceable under Oklahoma law.  OKLA. STAT. tit. 15, § 321; <u>Founders</u>

4

Bank & Trust Co. v. Upsher, 830 P.2d 1355 (Okla. 1992).  An agreement to guaranty another's debt is collateral and independent of the principal debtor's obligations to the creditor, and the guarantor does not need to be a party to the principal's agreement with the creditor.  Riverside Nat'l Bank v. Manolakis, 613 P.2d 438, 441 (Okla. 1980).  A guarantor's liability is conditioned upon the default of the principal, but the guarantor's obligations depend upon the terms of the guaranty, rather than the terms of the creditor's contract with the principal.  See Borges v. Waller, 270 P.3d 202, 204-05 (Okla. Civ. App. 2011).  In determining the intent of the parties to a guaranty, "it should be taken most strongly against the Guarantor and in favor of the Creditor."  Rucker v. Republic Supply Co., 415 P.2d 951, 954 (Okla. 1966).

McGill argues that she agreed to guaranty Wire Nuts' indebtedness only up to the $2,500 credit limit requested in the Application.  However, as a matter of Oklahoma law, her personal guaranty is separate and independent from Wire Nuts' obligations under its agreement with Irby, and she must show that the credit limit was incorporated into the guaranty.  The guaranty expressly states that it is "primary, absolute, unconditional, open and continuing guaranty" and there is no limit on the amount of the guarantor's liability to Irby.  Dkt. # 59-1, at 6.  In this case, the guaranty does not expressly or impliedly incorporate the credit limit from the Application as a limit on the guarantor's liability.

Plaintiff cites Federal Deposit Ins. Corp. v. B.A.S., Inc., 735 P.2d 358 (Okla. Civ. App. 1987), for the proposition that a guarantor's liability to a creditor is limited by the amount borrowed by the debtor on the contract underlying the guaranty.  In Federal Deposit Ins. Corp., Shades and Associates borrowed $30,000 from a bank, and Beverly Shades executed a personal guaranty stating that "[i]t is understood that the amount of credit extended by or liability incurred by you is limited

to: _____." Id. at 359.  In the blank space, the bank typed "Thirty-thousand dollars and no/100." Id.  The borrower, Shades and Associates, paid $3,000 on the loan before defaulting, and the bank sought to collect $27,000 in principal and over $16,000 in interest in fees from Beverly Shades pursuant to the guaranty.  Id. at 360.  The trial court entered in judgment in favor of the bank for the full amount sought, but the Oklahoma Court of Civil Appeals reversed the trial court's decision. The appellate court found that the parties expressly limited the guarantor's liability to $30,000, and the bank's attempt to collect more than $30,000 constituted a unilateral modification of the parties' agreement.  Id. at 361.  The case was remanded to the trial court for modification of the judgment to award the bank the sum of $27,000 for unpaid principal and $3,000 in prejudgment interest and fees.  Id.

Federal Deposit Ins. Corp. is inapplicable to this case, because the parties did not include an express limit on the guarantor's liability in the personal guaranty executed by McGill.  Instead, the guaranty states that it is unconditional and that the guarantor is liable for the full amount of Wire Nuts' indebtedness.  Unlike Federal Deposit Ins. Corp., the amount of the borrower's loan or credit limit is not incorporated into the guaranty, and the plain language of the guaranty holds the guarantor liable for all indebtedness incurred by Wire Nuts.  By seeking the full amount of principal and service charges owed by Wire Nuts, plaintiff is not attempting to modify the terms of McGill's guaranty, because she agreed to "unconditionally guarantee to [Irby] the payment of all existing indebtedness of [Wire Nuts.]"  Dkt. # 59-1, at 6.

McGill argues that there is a genuine dispute as to a material fact that precludes entry of summary judgment in favor of plaintiff, because she believed that the personal guaranty was limited by the $2,500 credit limit stated in the Application, and that a reasonable jury could find that

plaintiff is attempting to unilaterally modify the terms of the guaranty. Dkt. # 62, at 9.  However, McGill's subjective belief is irrelevant.  Oklahoma courts follow the parol evidence rule and the Oklahoma Supreme Court has clearly stated that the parol evidence rule is a matter of Oklahoma substantive law, rather than a rule of evidence.  First Nat'l Bank in Durant v. Honey Creek Entertainment Corp., 54 P.3d 100, 104 (Okla. 2002).  "The parol evidence rule provides that unless fraud or mistake is involved pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of the executed written agreement." Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529  (Okla. 1985).  When the language of a contract is clear and unambiguous, evidence of one party's subjective intent when entering the contract is inadmissible.  First Nat'l Bank & Trust Co. of Norman, Oklahoma v. Security Nat'l Bank & Trust Co. of Norman, Oklahoma, 676 P.2d 837, 841 (Okla. 1984). The language of the guaranty is clear and unambiguous that McGill agreed to pay the full amount of Wire Nuts' indebtedness for credit extended under the Application, and her subjective belief that the guaranty extended only up to the amount of $2,500 is inadmissible. Thus, this does not give rise to a genuine dispute of material fact.

The Court finds that plaintiff is entitled to summary judgment on its claim of breach of guaranty against McGill.  The parties do not contest the amount of Wire Nuts' liability to Irby, and the Court has found that McGill is liable for the full amount under her personal guaranty. Judgment will be entered in favor of Irby and against McGill for the full amount of Wire Nuts' liability to Irby and, as no claims remain for adjudication, this case will be terminated.

**IT IS THEREFORE ORDERED** that Stuart C. Irby Company's Motion for Summary Judgment on the Claim Asserted against Christy McGill (Dkt. ## 59, 60) is **granted**.  A separate judgment is entered herewith.

7

**IT IS FURTHER ORDERED** that Stuart C. Irby's Company's Motion in Limine and Brief in Support (Dkt. # 61), plaintiff's Motion for Resetting of Trial Date and Related Pretrial Deadlines (Dkt. # 64) and Defendant Christy McGill's Joinder in the Motion for Resetting of Trial Date and Related Pretrial Deadlines of Plaintiff Stuart C. Irby Company (Dkt. # 65) are **moot**.

**IT IS FURTHER ORDERED** that no claims remain for adjudication and the Court Clerk is directed to terminate this case.

**DATED** this 19th day of December, 2013.

Claire V Eagle

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

8